### SIMMONDS v. EYRICH, et.

Common Pleas Court, Hamilton County.

No. A-123949. Decided October 20, 1950.

Richard E. Simmonds, Bert H. Long, Cincinnati, for plaintiff.

Carson Hoy, Pros. Atty., C. Watson Hover, Carl B. Rubin, Asst. Pros. Attys., Cincinnati, Amicus Curiae.

Herbert S. Duffy, Atty. Genl., Nelson Lancione, Robert A. O'Neill, Asst. Attys. Genl., Columbus, for defendants.

## OPINION

By WEBER, J.

Based upon informal opinion No. 93 of the Attorney General of Ohio, on July 25, 1950 the Secretary of the State of Ohio, as the chief election officer of the State, issued a release to the defendants, the duly appointed, qualified and acting Board of Elections of Hamilton County, Ohio, directing that the same assistance in marking his ballot should be given to an illiterate voter as is given under authority of

§4785-132 **GC,** to a voter suffering from a physical infirmity. Similar instructions were circulated to all boards of elections in Ohio.

The plaintiff is a duly nominated and certified candidate for the office of Representative to the General Assembly of Ohio from Hamilton County, which office is to be voted upon at the general election to be held November 7, 1950. The plaintiff prays that the defendants, as members of said Hamilton County Board of Elections, be permanently enjoined from issuing, in complianee with said directive of the Secretary of the State of Ohio, instructions to election officials in Hamilton County that assistance be furnished to illiterate voters in marking their ballots, on the ground that assistance to illiterate voters in the manner directed in the notice from the Secretary of State and received by the defendants will be in violation of the election laws of the State of Ohio and detrimental to the rights of the plaintiff as a voter and as a candidate for said office and his special interest in legal voting.

A general demurrer was filed to the petition on the ground that it does not state a cause of action. It was stipulated that the defendants intended to and would issue said instructions unless permanently enjoined. The plaintiff testified that his name would appear on the ballot at the coming election as a duly nominated candidate for the office of representative to the General Assembly; that furnishing aid to illiterate voters in marking their ballots was contrary to law and that permitting the ballots of such voters so aided to be counted would be inequitable to other voters and work a special injury to him in his capacity as such candidate and that such injury could not be compensated in money or otherwise.

At the close of the evidence a demurrer to the evidence was orally made. Two principal issues are raised by the pleadings and the evidence.

The first question—Does the plaintiff allege and prove sufficient facts to establish great or irreparable harm to him because of the threatened action of the Board of Elections?

It seems clear that every voter is as much injured by the acceptance of votes cast in an illegal manner as by the exclusion of his own vote if cast in a legal manner. It makes little difference to him whether his vote is wrongfully excluded or completely neutralized by a vote cast in an illegal manner.

In the case of **Portmann v. Board of Elections of Stark County, 60 Oh Ap, 54, 13 O. O. 420,** a referendum was called upon a municipal ordinance. In allowing a mandatory in-

junction to require the Board of Deputy Supervisors of Elections of the county to submit the same in a form that is intelligible and not misleading the Court said, at page 57:

"It is contended, in the first place, by the demurrer, that the plaintiff is without authority to maintain this action, either as an elector, or as a taxpayer. It is to be observed that this is an appeal to a court of equity to remedy a claimed injustice. Such an action is necessary for the protection not only of the plaintiff, but of numerous other electors in the city. The matter is one of general and public interest. It seems to us that, if the facts do show that a gross injustice would be done except for relief from a court, the situation presented is one which does justify a court of equity in granting relief, and the plaintiff is clearly within his rights in instituting and maintaning such an action."

There is no way to repair or compensate such an injury, and the injury is greater and more difficult to repair if the plaintiff is a candidate and votes cast for him in a legal manner are completely neutralized by votes cast in an illegal manner for another candidate. An injunction against such a threatened injury is the only adequate remedy available to the plaintiff.

The second question is whether a duly qualified voter who is unable to read and write the English language is entitled to assistance in marking his ballot.

This involves a determination whether the instructions of the Secretary of State to give aid to illiterate voters in marking their ballots is contrary to the present law of Ohio. The question is made acute because of the so-called Office or Massachusetts form of ballot recently adopted as **Section 2a, Article V of the Constitution of Ohio,** and which will be used for the first time in the coming November election. Since the candidates on said ballot must be voted for separately and their names will be rotated, it may be difficult for a voter with little education, as well as for a voter who cannot read or write, to properly express his choice. If this were the only form of ballot ever used, the question presented by this suit could be easily answered, since whatever educational qualifications it may require are imposed by constitutional amendment and no objections can be made thereto. However, the question is much broader in its scope; it applies to all forms of ballot, including proposals for constitutional amendments, bond issues, the proportional representation system of voting, etc.

**Sec. 4785-6 GC,** makes the Secretary of State the chief election officer of the State and invests him "with such duties relating to * * * the conduct of elections as are prescribed in this act."

**Sec. 4785-7 GC,** provides in part: "It shall be the duty of the secretary of state * * * to prepare rules, regulations and instructions for the conduct of elections."

**Sec. 4785-13 GC,** prescribes the duties of the boards of elections in their respective jurisdictions among which duties are:

Subsection e. "To make and issue such rules, regulations and instructions, not inconsistent with law, or rules established by the chief election officer * * *."

The only express authority for giving assistance to voters in marking ballots is found in §4785-132 GC:

"Assisting Voter in Marking Ballot. Any elector who declares to a presiding judge of elections that he is unable to mark his ballot by reason of physical infirmity, and such physical infirmity is apparent to the judges to be sufficient to incapacitate the voter for marking his ballot properly, may upon request be aided by a near relative who shall be admitted to the booth with such elector, or may receive the assistance in the marking thereof of the two judges of elections belonging to different political parties, and they shall thereafter give no information in regard to this matter. The presiding judge may require such declaration of inability to be made by the elector under oath before him. Such assistance shall not be rendered for any other cause."

The standard dictionaries define "physical" as follows: "Relating to or pertaining to the body, as distinguished from the mind or soul or emotions."

It seems clear from the mere wording of this statute that the legislature intended to exclude, if not expressly deny, assistance to all voters except those who are unable to mark their ballot because of a bodily infirmity which is apparent, and that the directive of the Secretary of State which extends aid in the same manner to illiterates is contrary to law. This conclusion is confirmed when consideration is given to the language in former statutes relating to the same subject and repealed by §4785-132 GC, enacted in 1930. The first such provision appears in **88 Ohio Laws (1891) page 461,** and reads, in part, as follows:

"Any elector who declares to the presiding judge * * *, that for any reason he is unable to mark his ballot, shall, upon request, receive assistance * * * in the marking thereof * * *."

This section was amended in 1896 to read, in part, as follows:

"* * * unable to mark his ballot by reason of blindness, paralysis, extreme old age, or other physical infirmity and such physical infirmity is apparent * * *. But such assistance shall not be rendered for any other cause which the voter may specify."

Consideration of the penalty sections of the law relating to the same matter also confirms the conclusion that §4785-132 GC, permits aid only to voters unable to mark their ballots by reason of a bodily infirmity which is apparent.

Sec. 4785-209 GC, reads in part as follows:

"Whoever, being a judge or clerk of elections, * * * misleads an elector who is physically unable to prepare his ballot; or marks a ballot for such elector otherwise than as directed by him, * * * upon conviction thereof, shall be fined not less than one hundred and not more than five hundred dollars, or imprisoned in the county jail not less than three nor more than six months, or both."

This section first enacted in 1930 amended and repealed former §2966-44 GC, which read in part as follows:

"Any judge or clerk who shall mislead an illiterate voter or a voter who is blind or for any reason unable to prepare his ballot * * *."

Comparison of the above laws relating to assistance to voters in marking their ballots clearly manifests an intention on the part of the legislature to secure the secrecy and purity of the ballot by confining assistance to voters to cases of extreme necessity and in which there is no other way by which the disability can be removed in the least degree so as to enable the voter, when in the booth, to place a mark upon the ballot.

But counsel for the defendants contend that if such is the necessary and proper interpretation of §4785-132 GC, then the practical effect of said law is to disenfranchise the

voter and that the law is therefore unconstitutional, and ·if unconstitutional the original act (1891), repealed by it, is revived and under it assistance may be given to a voter unable for any reason to mark his ballot.

It is well settled that it is the imperative duty of the court to declare an act of the legislature void if it is in conflict with the fundamental law. It is equally well settled that the presumption is in favor of the validity of the law, and in order to condemn the law as unconstitutional the conflict between the law and the constitution must be so clear and substantial that the Judge feels a clear and strong conviction of their incompatibility with each other.

One basis of the claim that the law so interpreted is unconstitutional is that it indirectly and in its practical effect by legislative enactment requires literacy as a prerequisite to the right to vote or at least places an impediment upon the complete exercise of the right to vote.

There are very few decisions in other states directly in point and they are in conflict. The defendants rely principally upon the case of Wickham v. Coyner, 12 C. C. (N. S.) 433, decided by the Circuit Court of Delaware County. Referring to §4785-132 GC, the court says:

"Under the Constitution of the state, electors are not required to possess an educational qualification, and the legislature has no power to require qualifications in addition to those named in the Constitution.

"To place such a ticket in the hands of an elector to compel him to retire to a booth and prepare his ballot, without assistance, can not be considered in any light other than a direction to him to read party emblems, to vote a straight ticket, and to deprive him of all opportunity to vote for any candidate not upon the one ticket or the other.

"In harmony with these views, we are of the opinion that if the case required it, we would hold that the direction that the judges should not render assistance to voters other than those afflicted with blindness, paralysis, the feebleness of extreme old age, or other physical infirmity, is a limitation upon the right of an elector to cast his ballot not warranted by the Constitution of the state."

The intimation by the court in the above case that said law is invalid for the reason that it restricts the right to vote by imposing an educational qualification upon the right to vote, contrary to the constitution, is admitted by the court to be obiter dictum and therefore not binding upon this

court. Furthermore the reasoning of the court is not very convincing, since it is based upon the assumption that the statute under consideration does impose an educational qualification upon the right to vote. Much more convincing is the reasoning of the Supreme Court of Ohio in a case decided several years later and reported as **State, ex rel. Weinberger v. Miller, 87 Oh St, 12.** In that case the court held to be constitutional the act of the legislature which provided that judges should be elected upon a separate nonpartisan ballot and that the names of the candidates should be rotated.

It was contended that the law was unconstitutional because the difficulties presented to the voter by such a ballot indirectly imposed an educational qualification and that the practical effect would be to disenfranchise a voter who could not read or who had little education. The statute of 1896 which permitted assistance only to voters unable to mark their ballots by reason of blindness, paralysis and other apparent physical infirmities, was brought to the attention of the court, and, although the court made no mention of that law in the opinion, it is clear that it had in mind, when deciding the validity of the nonpartisan judicial ballot, the fact that the law permitted no assistance to an illiterate voter. A few quotations from the opinion are pertinent to and furnish an excellent guide on the phase of the case now under consideration.

"Laws must afford to everybody equal opportunities under the law, but it is not possible for constitutions or legislation to make all men equal in understanding, intelligence and education.

"When the framers of the constitution adopted the amendment which provided that elections should be by ballot, they must have known that there were then, and in all probability would continue to be, electors of this state unable to read.

"It is apparent that just so long as we are to have elections by written or printed ballots, just so long must the uneducated man find it difficult to vote for the candidates of his choice.

"It is always much more difficult for some electors to cast their ballots than for others, but these difficulties inhere in the inequalities of the men themselves and not in the law.

"If the ballot presents to the uneducated elector the difficulties complained of, the state is powerless to give him further aid until some Solomon shall devise a plan and method that will obviate all these difficulties, and provide not only equal opportunities to the electors, but also pro-

vide some method by which all electors may be able to take the same advantage of these opportunities.

"The voter who will not undertake to advise himself on these matters, holds too lightly the privilege and prerogative of the ballot, and there would seem to be no just reason why legislation should be shaped to meet his inconvenience or to overcome his indifference.

"It must be conceded that the intention and purpose of all elections is to register the will of the people honestly expressed through the ballot, but every elector must use some intelligence in the exercise of his right and privilege, otherwise an election would be nothing more than a farce, unless indeed it should later develop into a state tragedy."

It is clear from the above quotations that the court reached its conclusion on the assumption that there is no duty upon the legislature to provide a method such as assistance in marking the ballot which will tend to equalize the capacity of all voters to express their will in voting. It is also significant that when the people provided in their constitution that voting should be by ballot and in the last amendment that voting, in certain cases, should be by the Office form of ballot, they did not require that assistance be given to the illiterate voter.

The defendants also rely upon the case of **Monroe, et al. v. Collins, 17 Oh St, 666,** and stress the following rule which the court there followed:

"The true line between laws which take away or abridge the right of suffrage, and those which lawfully may be enacted to regulate its exercise, is laid down by the Supreme Court of Massachusetts in Capen v. Foster, 12 Pick. 488. It was there held, substantially, that laws of the latter description must be reasonable, uniform and impartial, and must be calculated to facilitate and secure, rather than to subvert or impede the exercise of the right to vote."

This rule is well settled and is sound. It was properly applied to the facts of the case. The constitution of Ohio at that time permitted only white males to vote. The law was settled that any man who had a preponderance of white blood was deemed to be white. The legislature passed a law which required a man who visibly had an admixture of white and African blood to answer numerous questions which would present evidence that he had a preponderance of white blood. The court held the law to be invalid.

It will be noticed that the law in question in the above case made positive provisions which required a compliance therewith, and that these provisions not only seriously impeded the free exercise of the right to vote, but also probably abridged the right or opportunity to vote.

The law under consideration in this case, relating to aid in marking ballots, contains no positive provisions requiring active compliance therewith on the part of an illiterate voter. It is negative. It merely fails to provide a method which will obviate or at least alleviate the impediment which ininheres in the voter himself by reason of his inability to read or his lack of sufficient education to understand the ballot so as to enable him to completely express his will with reference thereto.

If this failure of the legislature to so provide renders this law invalid, it would seem logically to follow that the legislature must either provide a ballot so simple in form and substance that every voter will be able to fully express his will with reference thereto or provide a method or plan which will remove the effects of a difference in intelligence and education and thus obviate, or at least alleviate, all difficulties presented by a particular ballot to any particular class of voters. We find nothing in the law of Ohio which either expressly or impliedly imposes such a duty upon the legislature. **Sec. 4785-132 GC**, does not impose an educational qualification and is not for that reason unconstitutional.

It is necessary to examine another possible constitutional objection to the statute under consideration. It does provide assistance to a particular class of voters, namely, those who are unable to mark their ballot because of a physical infirmity which makes the disability apparent. It is well settled that class legislation is valid only if it is a reasonable classification and affects all in the class impartially and operates uniformly throughout the State. There can be no doubt that this law operates uniformly throughout the State and impartially upon all members in the class. Is the classification reasonable? For illustration is there a clear demarcation between the effects upon the ability to mark a ballot caused by a physical infirmity such as blindness or paralysis and such effect caused merely by the inability to read and write or other educational inadequacy? We think so. Regardless of any preliminary preparation the physically disabled person makes, when he enters the voting booth his disability remains with him. Regardless of his understanding of the ballot and even though with assistance he has prepared a sample ballot, he is still unable to place a mark upon it.

The illiterate voter may by preparation and consultation with others prior to the election acquire some understanding; he may prepare some guide such as a sample ballot, which will enable him to identify the candidates for whom he wishes to vote or the measures for which he is in favor. His disability to mark the ballot may by sufficient effort on his part be cured. His disability does not necessarily continue with him into the voting booth.

There is another important line of demarcation. The law at one time provided aid to any person who claimed that he was unable to mark his ballot for any reason. Experience with this law apparently convinced the legislature that it opened the door too wide to fraud and that the necessity of such a rule was not sufficient to compensate for the possible invasion it would bring upon the security of the secrecy and purity of the ballot. They then enacted the present law which confines assistance to those having a physical infirmity which is such as to make it apparent that such a person cannot mark the ballot. With respect to such an infirmity there is little chance of simulation which cannot be easily detected. Where the claimed disability is illiteracy or lack of understanding there is much opportunity for simulation and the simulation cannot be detected except by difficult and time-consuming tests which would impede the conduct of the election. Sec. 4785-132 GC, is a valid classification. Whether this law is wise is a matter for the legislature to determine. If otherwise valid the question of whether it is wise or unwise is no concern of the court.

For the foregoing reasons we hold that §4785-132 GC, is a valid law. In **State, ex rel. Sagebiel v. Board of Elections of Montgomery County, 144 Oh St, 162, 29 O. O.** 259, the Court on page 166 stated:

"It needs no citation of authority to demonstrate that the orders of the Secretary of State which are to be obeyed must be lawful orders finding their support in some section or sections of the General Code."

We find no such support for the orders of the Secretary of State that assistance should be given to illiterate voters in marking their ballots. Such orders are contrary to the only law upon the subject and therefore are null and void.

It is therefore ordered, adjudged and decreed that the release of the Secretary of State to the defendants, that instructions should be issued by them to give the same assistance to illiterate voters in marking their ballots as §4785-132 GC,

provides should be given to those voters having a physical infirmity which renders them unable to mark their ballot, is unlawful, and that the defendants be and are hereby permanently enjoined from obeying said orders of the Secretary of State and giving instructions that assistance should be given in the polling places to illiterate voters in marking their ballots.